# In the United States Court of Federal Claims

No. 11-808T
(Filed: October 20, 2014)

———————————————

|  |  |  |
|---|---|---|
| WELLS FARGO & COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Tax; Interest Netting under 26 U.S.C. |
| v. | ) | § 6621(d); "Same Taxpayer"; Merged |
| | ) | Corporations |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

———————————————

*Gerald A. Kafka*, Washington, DC, with whom were *Rita A. Cavanagh* and *Chad D. Nardiello*, of counsel, and *Andrew T. Gardner*, Minneapolis, MN, tax counsel, for plaintiff.

*Jason Bergmann*, Tax Division, United States Department of Justice, Washington, DC, with whom were *Kathryn Keneally*, Assistant Attorney General, and *David I. Pincus*, Chief, Court of Federal Claims Section, for defendant.

## AMENDED OPINION

**FIRESTONE**, *Judge*.

This case presents an issue of first impression regarding the application of Internal Revenue Code ("I.R.C." or "Code") § 6621(d) to corporations that have acquired other corporations or been acquired through a statutory merger.  It concerns whether plaintiff, Wells Fargo & Company ("Wells Fargo"), is entitled to net the interest paid on certain tax underpayments owed by Wells Fargo or its predecessor, First Union Corporation ("First Union"), with the interest owed by the United States to Wells Fargo on

overpayments made by First Union or other companies acquired by Wells Fargo through various corporate mergers.  The case turns on the definition of the term "same taxpayer" in § 6621(d).[1]  Section 6621(d) was enacted in 1998 to allow for "global netting" on interest rates for tax overpayments and tax underpayments by the "same taxpayer" in order to address the disparity between the higher interest rate imposed on tax underpayments and the lower interest rate applied when the government pays a refund on tax overpayments.[2]  The statute provides that the interest rates may be netted to zero when there are overlapping overpayments and underpayments by the "same taxpayer"

---

[1] The provision states:

> Elimination of interest on overlapping periods of tax overpayments and underpayments.--To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

I.R.C. § 6621(d).

[2] The purpose of § 6621(d) is addressed in detail in <u>Magma Power Co. v. United States</u>, 101 Fed. Cl. 562 (2011).  In brief, interest is payable on tax deficiencies under I.R.C. § 6601 and is allowed on overpayments under I.R.C. § 6611.  Under the Code, taxpayers pay interest at a higher rate on tax underpayments than the interest they receive from the IRS on tax overpayments.  Because of this differential, a taxpayer that underpaid some taxes and overpaid others could end up owing interest even where the taxes themselves netted to zero.  Prior to § 6621(d)'s enactment, this imbalance could only be corrected through discretionary offsetting under I.R.C. § 6402, in the limited circumstances where the underlying tax obligations were still unresolved and the interest can be calculated before any final tax payment is made.  Section 6621(d) permits taxpayers to correct the interest differential by allowing for a refund of the extra interest payment even if one or both of the tax and interest payments have been made and the overlapping period of tax overpayment and tax underpayment is thus not identified until after the tax payment.

during the same period.[3]  Plaintiff argues that the term "same taxpayer" includes both

predecessors of the surviving corporation in a statutory merger and that, as a result, the

statute allows for interest netting regardless of whether the overlapping overpayments

and underpayments involve corporations that were separate until the merger is carried

out.  According to plaintiff, following a merger, the entities become one and the same as

a matter of law and thus become the "same" for purposes of interest netting.  The

government argues that the phrase "same taxpayer" is narrower than plaintiff argues.  The

government contends that taxpayers should only be considered the "same" for purposes §

6621(d) if they had the same Taxpayer Identification Number ("TIN") at the time of the

initial tax overpayment or underpayment, regardless of whether the entities later merged

and the surviving entity is now a single entity for tax purposes.

Now pending before the court are the parties' cross motions for partial summary

judgment under Rule 56 of the Rules of the United States Court of Federal Claims

("RCFC") with regard to the proper interpretation of "same taxpayer" in the context of

three separate test claims arising from specific Wells Fargo mergers, representing the

three varieties of transaction that occur in this case.[4]  Oral argument was held on June 6,

2014.  For the reasons set forth below, the court **GRANTS** plaintiff's motion for partial

summary judgment and **DENIES** the government's cross-motion for partial summary

judgment.

---

[3] There is no dispute between the parties that for purposes of this motion, the plaintiff has
satisfied the requirement that the tax and interest payments cover overlapping periods.  The issue
on this motion is whether the tax and interest payments involve the "same taxpayer."

[4] The facts of these test claims are discussed <u>infra</u>.

## I.     BACKGROUND

The relevant facts are undisputed.  The claims in this case arise from seven mergers which culminated in the formation of Wells Fargo as it currently exists.  Consol. Stmt. of Uncont. Facts ¶ 4.  These mergers can be divided into two lines: the Wells Fargo line and the Wachovia line.

### a.     Wells Fargo Line of Mergers

In 1998, Norwest Corporation ("Norwest") acquired Wells Fargo & Company ("Old Wells Fargo") through a forward triangular merger under I.R.C. §§ 368(a)(1)(A), 368(a)(2)(D).[5]  Id. at ¶¶ 8, 10.  The board of directors approved a merger agreement on June 7, 1998, which was subsequently approved by the shareholders.  Id. at ¶¶ 8-9.  Old Wells Fargo merged into WFC Holdings, Corp. ("WFC"), a subsidiary of Norwest organized for purposes of the merger.  Id. at ¶ 10.  As a result, Norwest and WFC survived the merger, while Old Wells Fargo's separate existence was terminated; Norwest changed its name to Wells Fargo & Company.  Id. at ¶¶ 11-12, 15.  WFC

---

[5] Section 368(a)(1)(A) defines "a statutory merger or consolidation" as a type of reorganization. I.R.C. § 368(a)(1)(A).  Section 368(a)(2)(D) sets forth the procedure for a reorganization using a corporation's stock:

> The acquisition by one corporation, in exchange for stock of a corporation (referred to in this subparagraph as "controlling corporation") which is in control of the acquiring corporation, of substantially all of the properties of another corporation shall not disqualify a transaction under paragraph (1)(A) . . . if--
>
> (i)      no stock of the acquiring corporation is used in the transaction, and
>
> (ii)     in the case of a transaction under paragraph (1)(A), such transaction would have qualified under paragraph (1)(A) had the merger been into the controlling corporation.

I.R.C. § 368(a)(2)(D).

acquired the assets and assumed the liabilities of Old Wells Fargo, and became the common parent of the affiliated corporations that were previously members of Old Wells Fargo's consolidated group. Id. at ¶¶ 13-14.

In 2008, Wells Fargo and Wachovia Corporation ("New Wachovia") carried out a merger under I.R.C. § 368(a)(1)(A). Id. at ¶¶ 16, 18, 20. The board of directors approved a merger agreement on October 3, 2008, which was subsequently approved by the shareholders. Id. at ¶¶ 18-19. Wells Fargo survived the merger, while New Wachovia's separate existence was terminated. Id. at ¶¶ 21-22. Wells Fargo acquired the assets and assumed the liabilities of New Wachovia, and became the common parent of the affiliated corporations that were previously members of New Wachovia's consolidated group. Id. at ¶¶ 23-24.

### b.      Wachovia Line of Mergers

In 1996, First Union acquired First Fidelity Bancorporation ("Fidelity") through a forward triangular merger under I.R.C. §§ 368(a)(1)(A), 368(a)(2)(D). Id. at ¶¶ 25, 29. The board of directors approved a merger agreement on December 22, 1995, which was subsequently approved by the shareholders. Id. at ¶¶ 27-28. Fidelity merged into First Union Corporation of New Jersey ("FCNJ"), a subsidiary of First Union organized for purposes of the merger. Id. at ¶ 29. As a result, First Union and FCNJ survived the merger, while Fidelity's separate existence was terminated. Id. at ¶¶ 30-31. FCNJ acquired the assets and assumed the liabilities of Fidelity, and became the common parent of the affiliated corporations that were previously members of Fidelity's consolidated group. Id. at ¶¶ 32-33.

In 1998, FCNJ and First Union carried out a merger under I.R.C. § 368(a)(1)(A). Id. at ¶¶ 34, 37.  First Union held 100% of the stock of FCNJ.  Id. at 35.  The board of directors approved a merger plan on February 11, 1998.  Id. at ¶ 36.  First Union survived the merger, while FCNJ's separate existence was terminated.  Id. at ¶¶ 38-39.  First Union acquired the assets and assumed the liabilities of FCNJ.  Id. at ¶¶ 40-41.

In 1997, First Union and Signet Banking Corporation ("Signet") carried out a merger under I.R.C. § 368(a)(1)(A).  Id. at ¶¶ 42, 46.  The board of directors approved a merger agreement on July 18, 1997, which was subsequently approved by the shareholders.  Id. at ¶¶ 44-45.  First Union survived the merger, while Signet's separate existence was terminated.  Id. at ¶¶ 47-48.  First Union acquired the assets and assumed the liabilities of Signet, and became the common parent of the affiliated corporations that were previously members of Signet's consolidated group.  Id. at ¶¶ 49-50.

In 1998, First Union and CoreStates Financial Corporation ("CoreStates") carried out a merger under I.R.C. § 368(a)(1)(A).  Id. at ¶¶ 51, 55.  The board of directors approved a merger agreement on November 18, 1997, which was subsequently approved by the shareholders.  Id. at ¶¶ 53-54.  First Union survived the merger, while CoreStates's separate existence was terminated.  Id. at ¶¶ 56-57.  First Union acquired the assets and assumed the liabilities of CoreStates, and became the common parent of the affiliated corporations that were previously members of CoreStates's consolidated group.  Id. at ¶¶ 58-59.

In 2001, First Union and Wachovia Corporation ("Old Wachovia") carried out a merger under I.R.C. § 368(a)(1)(A).  Id. at ¶¶ 60, 64.  The board of directors approved a

merger agreement on April 15, 2001, which was subsequently approved by the shareholders.  Id. at ¶¶ 62-63.  First Union survived the merger, while Old Wachovia's separate existence was terminated.  Id. at ¶¶ 65-66.  First Union acquired the assets and assumed the liabilities of Old Wachovia, and became the common parent of the affiliated corporations that were previously members of Old Wachovia's consolidated group.  Id. at ¶¶ 67-68.  First Union changed its name to Wachovia Corporation.  Id. at ¶ 69.  As noted above, Wachovia and Wells Fargo merged in 2008.

### c.   Procedural History

Beginning in 2009, Wells Fargo filed three administrative claims with the IRS seeking, among other things, refunds based on interest netting between interest paid on tax underpayments and interest paid on tax overpayments, relying on § 6621(d).  Id. at 70.  Specifically, on December 15, 2010, Wells Fargo filed an interest claim related to New Wachovia and Old Wachovia.  Id. at 75.  On June 9, 2011, Wells Fargo filed an interest claim related to Wells Fargo.  Id. at 76.  On November 17, 2011, Wells Fargo filed an interest claim related to Wells Fargo, Signet, New Wachovia, and Old Wachovia.  Id. at 77.  These claims were not accepted.  The IRS did, however, allow for interest netting on certain other claims.[6]

---

[6] In addition to the claims at issue in this case, plaintiff has filed other claims with the IRS seeking to net interest pursuant to § 6621(d).  Def.'s Notice of Add'l Facts, Ex. 1 (Decl. of Andrew T. Gardner), ¶ 6, ECF No. 66.  In 2008, plaintiff filed administrative claims seeking refunds based on situations similar to those at issue in this case, as discussed below: (1) netting between a 1997 tax underpayment by Old Wachovia and a 1987 overpayment by First Union; (2) netting between a 1997 tax underpayment by First Union and a 1987 overpayment by First Union; and (3) netting between a 1997 underpayment by First Union and a 1995 overpayment by First Fidelity.  Id. at ¶¶ 7-9.  The IRS allowed interest netting between these payments on June 10, 2010.  Id.  The government contends that the IRS legally erred in allowing interest netting for

On December 1, 2011, plaintiff timely filed a complaint in this court.  After the government moved to dismiss some of plaintiff's claims under 28 U.S.C. § 1500 based on claims pending in district court,[7] plaintiff stipulated to their dismissal.  See Order Dismissing Claims, Oct. 23, 2012, ECF No. 34.  On October 22, 2012, plaintiff filed an amended complaint containing 64 separate claims for a refund on overpayments based on the application of the interest netting authorized under § 6621(d).  Thereafter, the parties identified three test claims, based on scenarios representing three different merger transactions, to test the application of § 6621(d):

Scenario One: This scenario is intended to address whether interest netting is allowed in connection with underpayments and overpayments between a pre-merger acquiring corporation and a pre-merger acquired corporation.  It involves underpayment interest on First Union's 1999 income tax account against overpayment interest on Old Wachovia's 1993 income tax account.

Scenario Two: This scenario is intended to address whether interest netting is allowed in connection with underpayments and overpayments between a pre-merger acquiring corporation and the post-merger surviving corporation.  It involves underpayment interest on First Union's 1999 income tax account against overpayment interest on First Union's 1993 income tax account.

---

those claims on the grounds that they preceded a federal circuit decision which the government contends dictates a different outcome.  See infra page 19.

[7] That prior litigation is still pending in the United States District Court for the District of Minnesota.

Scenario Three: This scenario is intended to address whether interest netting is allowed between the pre-merger acquired corporation and the post-merger surviving corporation.  It involves underpayment interest on First Union's 1999 income tax account against overpayment interest on CoreStates's 1992 income tax account.

## II.    STANDARD OF REVIEW

Under RCFC 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  This case is especially appropriate for summary judgment because the material facts are not in dispute and the parties have presented a purely legal question for the court to resolve.  RCFC 56(a).

## III.   DISCUSSION

As discussed above, because interest netting is allowed by the "same taxpayer," the dispute in this case centers on the meaning of "same taxpayer" under § 6621(d) in the context of a statutory merger.  Under the government's definition of the phrase, a taxpayer is only the "same taxpayer" if and only if, at the time of the overlapping tax payments, both taxpayers share the same TIN.  Because an acquired company never has the same TIN as the acquiring or surviving corporation, the government argues, interest on a tax underpayment or overpayment attributable to income from entities later acquired by Wells Fargo cannot be netted with interest on overpayments or underpayments attributable to Wells Fargo.

Plaintiff argues that § 6621(d) allows for interest netting among merged entities on the grounds that, following a merger, the acquiring corporation becomes one and the

same with the corporation it acquired by operation of law.  In such circumstances,

plaintiff argues, it shares the history of both the acquired and acquiring entity.  According

to Wells Fargo, the government's interpretation of "same taxpayer" is legally incorrect

because it fails to take into account the legal realities of corporations following mergers,

including the obligation of the surviving corporation to assume the tax liabilities of the

acquired entity.  Plaintiff further argues that, following a statutory merger, the acquired

entity ceases to exist, along with its TIN, and thus at the time a taxpayer seeks interest

netting following a merger, the TIN no longer serves as an adequate representation of

taxpayers for purposes of determining "same taxpayer" status.[8]  It is with this

understanding of the parties' arguments that the court turns to its analysis.

> **a.    The Statutory Language and Legislative History Do Not Provide a Plain Meaning for "Same Taxpayer"**

As with any case involving a question of statutory interpretation or construction,

we begin with the language of the statute itself.  Duncan v. Walker, 533 U.S. 167, 172

(2001).  Here, as noted above, § 6621(d), provides:

> To the extent that, for any period, interest is payable under subchapter A
> and allowable under subchapter B on equivalent underpayments and

---

[8] As discussed later in this opinion, plaintiff acknowledges that, as a matter of law, a surviving corporation does not acquire certain tax attributes of an acquired corporation while other attributes are authorized under I.R.C. § 381.  Interest netting is not explicitly identified in the Code as a tax attribute that survives acquisition of a corporation.  The government argues that interest netting is a tax attribute of an acquired corporation and unless expressly permitted is not allowed.  Plaintiff argues that interest netting is instead a calculation related to interest itself rather than a separate attribute, and further argues that interest is treated as a tax.  Thus, according to plaintiff, interest netting is not a tax attribute of the acquired corporation.  As discussed infra, tax attributes are typically tax benefits—such as deductions—authorized by the Code.

overpayments <u>by the same taxpayer</u> of tax imposed by this title, the net rate
of interest under this section on such amounts shall be zero for such period.

I.R.C. § 6621(d) (emphasis added).  "Same taxpayer" is not defined in § 6621(d), nor is it

defined elsewhere in the IRC.  In addition, there are no Treasury regulations that define

"same taxpayer."  The government nonetheless argues that the plain language of the text

requires the use of the TIN to determine whether parties are the "same taxpayer."

Specifically, the government argues that its interpretation is compelled by the placement

of the phrase "by the same taxpayer" immediately following "equivalent underpayments

and overpayments" in § 6621(d).  According to the government, the statute creates a

temporal requirement which mandates that the taxpayer seeking to engage in interest

netting be the same at the time that the payments were made, and that this requirement

can only be satisfied by having the same TIN at the time the of the payments.

Plaintiff argues that any temporal requirement is met once a statutory merger is

completed.  Specifically, plaintiff argues that any temporal requirement is satisfied once

the corporations become the same legal entity by operation of law by completing the

statutory merger.  Thus, plaintiff contends that where, as here, interest on overpayments

and underpayments for the same period were identified and are either owed or refunded

to the post-merger corporation, the corporation liable for underpayment interest is, in

fact, the same corporation entitled to the overpayment interest.

The parties also disagree on the need to look to the legislative history in order to

resolve this dispute.  The government argues that resorting to the legislative history is not

necessary because the statutory text's meaning is plain.  Plaintiff argues that the

11

legislative history supports its view that the statute must be given a liberal construction as a remedial statute.  As noted by the parties, the term "same taxpayer" is not defined in the statute and is not self-defining.  Accordingly, the court finds that the meaning is not plain and turns to the legislative history for guidance.

A review of the legislative history reveals that Congress intended for § 6621(d) to be remedial in nature.  As such, the statute must be construed broadly.  Tcherepnin v. Knight, 389 U.S. 332, 336 (1967) ("In addition, we are guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes.").  The legislative history does not offer any insight into the meaning of the phrase "same taxpayer," but does provide some indication of Congress's purpose in passing the legislation.  First, the legislative history makes clear that Congress intended the provision to provide fairness for taxpayers.  H.R. Rep. No. 105-364, pt. 1, at 63-64 (1997) ("taxpayers should be charged interest only on the amount they actually owe, taking into account overpayments and underpayments from all open years."); S. Rep. No. 105-174 at 61 (1998).  Second, the legislative history also makes clear that Congress was aware that large corporations, like plaintiff, would be the primary beneficiaries of the provision, because only large corporations such as plaintiff would likely have multiple open years with the IRS.

Having considered the parties arguments, the court finds that the plain language of § 6621(d) does not answer the question presented because the phrase "same taxpayer" is not self-defining and the temporal relationship identified by the government does not aid in defining the term in the context of statutory mergers.  Plaintiff correctly notes that

"same taxpayer" is a legal term that relies on an examination of the legal status of the

taxpayer that is seeking to net interest.  In addition, a review of the legislative history

does not resolve the question presented.[9]  Without a discussion of the meaning of "same

taxpayer" in the legislative history, it is of limited help in defining the term.  As a result,

the court turns to the definitions proposed by the parties.

> **b.     Corporations formed through statutory mergers, in contrast to members of affiliated groups, are the "same taxpayer" for purposes of § 6621(d).**

The government argues that the legal right to net interest depends on the whether

the overpayment and underpayment were made by the taxpayer with the same TIN at the

time of the payments.  This argument is derived in large part from two cases: Energy E.

Corp. v. United States, 645 F.3d 1358 (Fed. Cir. 2011), and Magma Power Co. v. United

States, 101 Fed. Cl. 562 (2011).  In Energy East, the Federal Circuit held that a parent

corporation and subsidiary that were not affiliated at the time they each made tax

payments could not net interest under § 6621(d) in their consolidated return.  The

meaning of "same taxpayer" was not before the court and the court focused instead on the

issue of when the initial tax payments were made.  The holding was expanded by this

court in Magma Power, where the definition of "same taxpayer" was at issue.  In Magma

---

[9] The government argues that § 6621(d) must be strictly construed in its favor because it amounts to a waiver of sovereign immunity.  The court finds the government's reference to sovereign immunity to be misplaced.  The requirement for strict construction of a waiver does not mandate a ruling in the government's favor, and does not replace other canons of statutory interpretation. See Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 589 (2008) ("The sovereign immunity canon is just that—a canon of construction.  It is a tool for interpreting the law, and we have never held that it displaces the other traditional tools of statutory construction.  Indeed, the cases on which the Government relies all used other tools of construction in tandem with the sovereign immunity canon.").

Power, the court held that corporations that became affiliated after the subsidiary paid the tax could only net interest if the payments were made by or attributable to a taxpayer with the same TIN when the tax interest subject to netting was paid.  Thus, if a corporation with a different TIN later affiliates with another corporation, the overpayment by one affiliate cannot be netted with the underpayment of the parent corporation.  The government argues that these cases establish a strict rule that where the acquired corporation and the acquiring/surviving corporation have different TINs when the overpayment or underpayment arose, § 6621(d) does not permit interest netting between them.

Plaintiff argues that the government's reliance on Energy East and Magma Power is misplaced because those cases dealt with affiliated corporations filing consolidated returns and not with the change in legal status of the acquired and acquiring corporations following a statutory merger.  According to plaintiff, the legal status of a surviving corporation is significantly different from that of the relationship between a parent and subsidiary within a consolidated group.  In the case of a merger, plaintiff explains, the acquired and acquiring corporations become one and the same as the surviving corporation and thus share a common history.  In the case of parent and subsidiaries or other affiliated corporations that are part of a consolidated group, by contrast, each corporation retains its separate legal identity.  Energy East and Magma Power are different from the present case, plaintiff argues, because the corporation seeking to net interest in this case, unlike the corporations in those cases, has now assumed the identity of the acquired entity by operation of law.

14

The court finds that a review of the facts in <u>Energy East</u> and <u>Magma Power</u> supports the plaintiff's contention that those cases involve factual scenarios that are very different from the ones presented in this case.  In <u>Energy East</u>, the plaintiff acquired two other corporations, including their subsidiaries.  645 F.3d at 1359.  As the new parent to these subsidiaries, the plaintiff sought to net interest between itself and the new subsidiaries in its consolidated income tax return under I.R.C. § 1501.  <u>Id.</u>  The court noted that "[t]he parties do not dispute that [the taxpayers] were not the 'same taxpayer,' under any definition, when their respective underpayments and overpayments were made."  <u>Id.</u> at 1361.  In rejecting the taxpayer's argument that the consolidated group was now the "same taxpayer" for purposes of § 6621(d), the court then found that "[u]nder the proper interpretation of the statute, [the plaintiff] cannot net the interest from its subsidiaries' overpayments because it was not the same taxpayer as its subsidiaries at the time the payments were made."  <u>Id.</u> at 1363.

<u>Magma Power</u> also involved an effort at interest netting between parent and subsidiary corporations.  The subsidiary was acquired by a consolidated group, after which it was included in the consolidated income tax return of the parent corporation, although it paid some other taxes separately.  101 Fed. Cl. at 565.  The group sought to net interest on the subsidiary's pre-acquisition underpayment against post-acquisition overpayments by the parent.  <u>Id.</u>  The parties did not dispute that the subsidiary was responsible for the overpayment, but disputed whether or not the group was permitted to net the subsidiary's pre-acquisition underpayments against post-acquisition overpayments by the group as a whole.  The plaintiffs argued that the interest could be netted, as "a

substantial portion of the overpayments were generated by an IRS audit and subsequent tax adjustment and were directly attributable to [the subsidiary]."  Id.  The Magma Power court, after finding that the Code does not define "same taxpayer," concluded that the TIN is the best point of reference for the "same taxpayer" determination, as it remained constant despite changes in corporate structure.  Id. at 569-71.  Rejecting the government's argument that a taxpayer could not net interest between payments made individually and payments made as part of a consolidated group, the court found that payments that could be traced to a particular TIN could be netted by the taxpayer with that TIN.  Id. at 569-70.

Because Energy East and Magma Power involved separate but affiliated corporations, the court concludes that neither case is controlling here.  Importantly, neither case examined the application of § 6621(d) in the context of a statutory merger, and the differences between merged corporations and consolidated corporations are critical to determining whether the proposed interest netting is by the "same taxpayer." In a merger, the acquired and acquiring corporations have no post-merger existence beyond the surviving corporation; instead, they become one and the same by operation of law, and thereafter the surviving corporation is liable for the pre-merger tax payments of both the acquired and acquiring corporations.  John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 550 n.3 (1964) ("But cf. the general rule that in the case of a merger the corporation which survives is liable for the debts and contracts of the one which disappears." (citing 15 Fletcher, Private Corporations (1961 rev. ed.), § 7121)); Treas. Reg. § 1.368-2(b)(1)(ii).  Because the surviving corporation steps into the shoes of the

acquired entity and the surviving corporation is liable retroactively for the tax payments of its predecessors, it does not matter when the initial payments were made. Put another way, following a merger, the law treats the acquired corporation as though it had always been part of the surviving entity.

The fact that the taxpayers in Energy East and Magma Power filed consolidated returns does not alter the court's analysis. In a consolidated group, assets and liabilities do not pass by operation of law, and an acquired corporation retains its individual identity. Those corporations do not become the same by operation of law. Indeed, members of a consolidated group may file a single consolidated income tax return, but are not required to do so. See I.R.C. § 1501. Thus, in this case, unlike Energy East and Magma Power, the corporations in the present case became the "same taxpayer" by virtue of the statutory merger.

It is for this reason, as well, that the TIN at the time that a tax is paid is not determinative of a taxpayer's legal status following a merger. An acquired corporation loses its TIN as part of a statutory merger because the surviving corporation becomes liable for any taxes owed by the acquired corporation. In this connection, the surviving corporation is also entitled to any refund due from tax overpayments made by the acquired corporation if the government has not yet paid the refund. In Magma Power, the court noted that the TIN served as a useful analog for sameness because it remained constant despite frequent changes in corporate structure. Id. at 570-71. However, where, as in this case, the acquired corporation discards its TIN following a merger and ceases to exist while the business of the corporation continues, it is clear that the TIN does not

account for this type of change in corporate structure, which was not foreseeable based on the facts in <u>Magma Power</u>.  Accordingly, the court finds that where a statutory merger has occurred, the surviving corporation is the "same taxpayer" as the acquired corporation for purposes of § 6621(d).

In this connection, the court notes that this holding is in accordance with the well-established principle that statutory mergers result in a complete merging of the identities of the two predecessor corporations under other federal statutes.  Most particularly, the Anti-Assignment Act, 31 U.S.C. § 3727, makes the same distinction between the surviving corporation in a statutory merger and members of a consolidated group.  The Anti-Assignment Act prevents a party with a claim against the United States from transferring or assigning that claim to another party unless "a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b).  However, where a claim passes by operation of law, no such prohibition applies.  <u>See</u> <u>Seaboard Air Line Ry. v. United States</u>, 256 U.S. 655, 656-57 (1921).  In <u>Seaboard</u>, the Supreme Court explicitly recognized mergers as a scenario in which claims transfer by operation of law, stating that "[w]e cannot believe that Congress intended to discourage, hinder or obstruct the orderly merger or consolidation of corporations as the various States might authorize."  <u>Id.</u> at 657.[10]  In contrast, as the

---

[10] The use of the term "consolidation" is distinct from a consolidated group, and refers instead to a change in corporate structure in which both predecessor corporations cease to exist and an entirely new surviving corporation is formed.  Black's Law Dictionary (9th ed. 2009), consolidation.

members of a consolidated group retain their separate identities and do not transfer their

assets and liabilities by operation of law, no analogous rule automatically applies.

Finally, as discussed below, this holding is consistent with the positions that the

IRS has taken in connection with the legal status of corporations following a statutory

merger.

     **c.     The IRS has consistently applied its rules to find that the parties to a statutory merger are the same following the merger.**

I.R.C. § 368(a)(1)(A) provides that a statutory merger under state law is a form of

reorganization recognized by the Code.  The result of such a statutory merger is then

defined by the Treasury regulations as follows:

> For purposes of section 368(a)(1)(A), a statutory merger or consolidation is a transaction effected pursuant to the statute or statutes necessary to effect the merger or consolidation, in which transaction, as a result of the operation of such statute or statutes, the following events occur simultaneously at the effective time of the transaction--

> (A) All of the assets (other than those distributed in the transaction) and liabilities (except to the extent such liabilities are satisfied or discharged in the transaction or are nonrecourse liabilities to which assets distributed in the transaction are subject) of each member of one or more combining units (each a transferor unit) become the assets and liabilities of one or more members of one other combining unit (the transferee unit); and

> (B) The combining entity of each transferor unit ceases its separate legal existence for all purposes; provided, however, that this requirement will be satisfied even if, under applicable law, after the effective time of the transaction, the combining entity of the transferor unit (or its officers, directors, or agents) may act or be acted against, or a member of the transferee unit (or its officers, directors, or agents) may act or be acted against in the name of the combining entity of the transferor unit, provided that such actions relate to assets or obligations of the combining entity of the transferor unit that arose, or relate to activities engaged in by such entity, prior to the effective time of the transaction,

> and such actions are not inconsistent with the requirements of
> paragraph (b)(1)(ii)(A) of this section.

Treas. Reg. § 1.368-2(b)(1)(ii).  Thus, under these rules, the assets and liabilities of a pre-merger corporation become the assets and liabilities of a post-merger surviving corporation and the pre-merger corporations cease their separate legal existence.

The government argues that regardless of whether the acquiring corporation becomes liable for the acquired corporation's tax obligations, including interest owed on any tax, interest netting is not a tax itself but rather is a "tax attribute" and as a result does not necessarily transfer in a statutory merger.  The government further argues that Congress has declined to include interest netting in I.R.C. § 381(a), which includes a list of tax attributes that transfer in a statutory merger.  While the government concedes that the list is not exclusive, it nonetheless argues that Congress amended § 381 after the enactment of § 6621(d) and therefore has had ample opportunity to list interest netting as an attribute, thereby demonstrating an intent to exclude it from the attributes that transfer following a merger.

Plaintiff argues that the government's reliance on § 381 is not relevant.  Plaintiff argues that interest netting is not a tax attribute but rather is an element of the tax itself.  Specifically, plaintiff argues that interest is part of the tax and interest netting is a calculation of tax overpaid or underpaid and not a separate tax attribute.  In support, plaintiff refers to I.R.C. § 6601(e)(1), which provides that interest "shall be assessed, collected, and paid in the same manner as taxes."  Plaintiff argues that, if interest is treated as a tax, then netting, which is simply a calculation based on interest generated, is

also part of a tax.  In response, the government argues that § 6601 is not controlling

because it is a collection provision and not a general statement regarding the status of

interest under the Code.  Plaintiff disagrees, arguing that § 6601 provides definitions and

a general overview of how interest functions within the Code, as evidenced by the

provision's title: "Interest on underpayment, nonpayment, or extensions of time for

payment, of tax."  I.R.C. § 6601.

The court agrees with plaintiff and finds that § 6601 is a general statement

regarding interest and is not limited to collections, as indicated by § 6601(a)'s "General

rule," which expressly refers to the Code, stating:

> If <u>any amount of tax imposed by this title</u> (whether required to be shown on
> a return, or to be paid by stamp or by some other method) is not paid on or
> before the last date prescribed for payment, interest on such amount at the
> underpayment rate established under section 6621 shall be paid for the
> period from such last date to the date paid.

I.R.C. § 6601(a) (emphasis added).  Thus, the court agrees with plaintiff that tax interest,

including netting, is not a tax attribute limited by § 381(a).[11]

---

[11] Even if the court agreed that interest netting is a tax attribute, the fact that interest netting is
not included on the § 381 list is not determinative because the legislative history on that
provision makes clear that the list was not intended to be exhaustive.  Specifically, the
Conference Report states,

> [t]he section is not intended to affect the carryover treatment of an item or tax
> attribute not specified in the section or the carryover treatment of items or tax
> attributes in corporate transactions not described in subsection (a).  No inference
> is to be drawn from the enactment of this section whether any item or tax attribute
> may be utilized by a successor or a predecessor corporation under existing law.

S. Rep. No. 83-1622, at 4915 (1954) (Conf. Rep.).  Thus, the government's reliance on § 381 is
misplaced.

The court also finds that that the government's position regarding whether the parties to a statutory merger become the "same taxpayer" for tax purposes is not consistent with the few rulings by the IRS on the question of the tax liability of a surviving corporation for the tax of an acquired corporation following a merger. As discussed below, whenever the IRS has determined sameness in situations involving statutory mergers—as opposed to those involving consolidated groups—the IRS has found that the acquired corporation is the same taxpayer as the surviving corporation. Thus, when the IRS considered employment taxes under the Federal Unemployment Tax Act ("FUTA"), it concluded that "where a corporation is absorbed by another corporation in a statutory merger or consolidation the resultant corporation should be regarded as the same taxpayer and the same employer for [FUTA] purposes." Rev. Rul. 62-60, 1962-1 C.B. 186, 1962 WL 13492 at 1 (1962). A similar result was reached in a ruling involving excise taxes under § 5705(a). In Rev. Rul. 66-125, the IRS held that following a merger the surviving corporation was entitled to a refund when it removed relevant products from the market. 1966-1 C.B. 342, 1966 WL 15263 at 1 (1966). The IRS stated that the surviving corporation "should be considered the 'manufacturer' within the intent of [the provision] since that corporation is the successor to the manufacturing corporation and, therefore, is entitled to file claim for credit or refund . . . ." Id. In a third ruling, the IRS determined that an acquired corporation's income should be included along with the surviving corporation's income in applying a now-repealed provision. Rev. Rul. 72-356, 1972-2 C.B. 452, 1972 WL 29559 at 1 (1972). Finally, in Rev. Rul. 80-144, the IRS determined that the unused foreign tax credits of an acquired corporation could transfer

over to the surviving corporation.  1980-23 I.R.B. 7, 1980-1 C.B. 80, 1980 WL 129701 at 1 (1980).

While none of these IRS rulings deal with interest netting, they demonstrate that the IRS has consistently treated the surviving corporation as the same taxpayer as the acquired corporation following a merger.  Under this view, interest netting by merged corporations would be consistent with IRS revenue rulings to date.  Indeed, as noted above, the IRS has previously allowed Wells Fargo to use interest netting in situations that are very similar to the ones at issue here.  In 2010, the IRS permitted interest netting under § 6621(d) for three situations involving plaintiff that are nearly identical to the three scenarios here.  See supra note 6.  While the government contends that this determination was made prior to Energy East, and is therefore legally questionable, the court has determined that Energy East is not determinative of this case and therefore has no reason to believe that the IRS has changed its practice in the interim.

In fact, a review of several IRS internal memoranda prepared by individual IRS attorneys, referred to as Chief Counsel Advice ("CCA") and Field Service Advice ("FSA"), demonstrates that interest netting involving merged corporations was authorized.  While this guidance is not precedential, even within the agency,[12] as in other cases, the court here finds that the guidance in these memoranda is helpful in determining the position of the IRS.  See Rowan Cos. v. United States, 452 U.S. 247, 262 n.17 (1981)

---

[12] As a result, it appears that some memoranda may conflict with others, apparently without revoking the earlier guidance.  As the court is merely treating these memoranda as informative of the IRS's approach to determining "same taxpayer" status, this does not affect the court's conclusion.

("Although these rulings have no precedential force, . . . they are evidence . . . ."

(citations omitted)); <u>Magma Power</u>, 101 Fed. Cl. at 571-72.

In one FSA,[13] the IRS discussed whether the surviving corporation in a statutory

merger could net interest between the overpayment of the acquired corporation and the

underpayment of the acquiring corporation.  The FSA concluded that, as a result of the

merger, "[the acquiring corporation] assumed [the acquired corporation]'s liabilities,"

and therefore is entitled to net the overpayment against its own underpayment.  I.R.S.

Field Serv. Advice Mem. 200212028 (Mar. 22, 2002), 2002 WL 442928.[14]  The FSA

noted that "[i]t is important that [the acquiring corporation] assume [the acquired

corporation]'s liabilities" and that the former would not be entitled to net interest if the

latter continued to exist.  <u>Id.</u>  Of the two memoranda in which the corporations were not

found to be the "same taxpayer," both involved subsidiaries and parent corporations,

which, as the court found above with respect to <u>Energy East</u> and <u>Magma Power</u>, are

factually distinct from the present case.  I.R.S. Chief Counsel Advice 201225011 (June

22, 2012), 2012 WL 2361303; I.R.S. Chief Counsel Advice 201222001 (June 1, 2012),

2012 WL 1961411.[15]  As a result, the court finds that IRS guidance is consistent with the

---

[13] The memorandum refers to itself as a CCA, but is titled as an FSA.

[14] The FSA also discussed whether § 6621(d) applies in eight other scenarios that are that are not relevant to this case, finding that it applied in one other scenario, did not apply in five, and was unresolved in the remaining two.

[15] As these memoranda were issued following <u>Energy East</u>, the government also argued that they demonstrated a reversal in the policy of the I.R.S. in applying § 6621(d).  However, because the court has concluded that the corporate structures are legally and factually distinct, no such conclusion may be drawn.

plaintiff's view that mergers are distinct from other consolidated corporate relationships and that in the case of mergers, interest netting is allowed because the merged corporations are considered to be the same taxpayers for purposes of § 6621(d).

Finally, the court finds that IRS guidance under an analogous provision of the Code is also consistent with the court's conclusion that an acquired corporation is the "same taxpayer" as the surviving corporation following a statutory merger. Specifically, plaintiff notes that I.R.C. § 6402, which allows for offsetting tax underpayments with tax overpayments by a taxpayer, has consistently treated merged corporations as the "same taxpayer" for purposes of that section. Section 6402 provides:

> In the case of any overpayment, the [IRS], within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f) refund any balance to such person.

I.R.C. § 6402(a). The government argues that this provision is narrower than § 6621(d) in that it applies only to tax years that remain open and is purely discretionary on the part of the IRS.[16] However, in FSAs addressing the issue, the IRS has consistently allowed offsetting by the surviving corporation with overpayments made by an acquired entity. In addition, the IRS has recognized the similarities between § 6402 and § 6621(d). In one FSA, the IRS addressed a scenario in which a consolidated group with prior

---

[16] Additionally, the government argues that § 6402 does not by its terms expressly limit offsetting to payments by the "same taxpayer," making the IRS's determinations about it irrelevant for purposes of deciding this issue. While the provision is not expressly limited as § 6621(d) is, the court notes that they serve the same remedial purpose of making taxpayers whole and, as discussed above, are analogized to each other. For this reason, the court finds that IRS policies regarding the provision provide additional support for the court's conclusion.

overpayments was acquired by another consolidated group with outstanding tax liabilities, resulting in the parent and some subsidiaries in the acquired group being liquidated or otherwise ceasing to exist.  I.R.S. Field Serv. Advice Mem. 200027026 (July 7, 2000), 2000 WL 33006060.  Noting that Congress intended for § 6402 to be broadly construed, the FSA states that the acquired group's overpayment could be credited against the surviving group's liabilities.  Id.  In this connection, the FSA briefly discusses § 6621(d), stating that the hypothetical at issue lacked the specific facts to address whether consolidated groups that share some, but not all, members are the "same taxpayer" for purposes of that provision.  The FSA then goes on to note that "the legislative history of section 6621(d) indicates that the zero interest rate applies in those circumstances where the Service would normally offset if the underpayments and overpayments were currently outstanding."  Id. (citing H.R. Rep. No. 105-599, at 257 (1998) (Conf. Rep.)).

### d.    Wells Fargo is Entitled to Net Interest in Each of The Test Claims.

The court thus concludes that merged corporations are the "same taxpayer" for purposes of § 6621(d) based on the undisputed principles of corporate law, as well as IRS rules governing statutory mergers and IRS guidance.  Thus, for each of the three scenarios presented in this case, interest netting will be allowed.

### i.    Scenario One

Under this fact pattern, plaintiff proposes to net underpayment interest on First Union's 1999 income tax account against overpayment interest on Old Wachovia's 1993 income tax account.  Specifically, plaintiff seeks to net interest for the periods from

March 15, 2000 to December 26, 2001 and from January 25, 2002 to March 15, 2004.

Thus, plaintiff seeks to net interest between the pre-merger acquired corporation and the

pre-merger acquiring corporation.  Contrary to the government's contention, the court

finds that this scenario is not controlled by Energy East because this scenario involves

interest netting in connection with merged corporations rather than consolidated groups.

Old Wachovia merged with First Union in 2001, and became one and the same with First

Union (now Wells Fargo) on the date of that merger, after which the surviving

corporation shared the past of both the acquired and acquiring corporations.

Accordingly, based on the authorities discussed above, the court finds that Old Wachovia

and First Union became the "same taxpayer" by operation of law and thus interest netting

is allowed.

### ii.      Scenario Two

Under this fact pattern, plaintiff seeks to net underpayment interest on First

Union's 1999 income tax account against overpayment interest on First Union's 1993

income tax account, representing a pre-merger acquiring corporation and the post-merger

surviving corporation.  Specifically, plaintiff seeks to net interest on the periods from

January 25, 2002 to March 15, 2002.  For the same reasons as the court has discussed

above, the fact that the underpayment may have arisen from income generated by

corporations that merged into First Union after 1993 is irrelevant.  Following the merger,

those corporations became one with First Union.  The court therefore finds that interest

netting is allowed in this scenario.

### iii.     Scenario Three

Under this fact pattern, plaintiff seeks to net underpayment interest on First Union's 1999 income tax account against overpayment interest on CoreStates's 1992 income tax account, representing a pre-merger acquired corporation and a post-merger surviving corporation.  Specifically, plaintiff seeks to net interest on the period from March 15, 2000 to March 15, 2002.  Based on the same reasoning discussed above, the court finds that the entities became the "same taxpayer" by operation of law through the statutory merger and thus the court finds that interest netting is allowed.

## IV.  CONCLUSION

For the reasons set forth above, plaintiff's motion for partial summary judgment is **GRANTED** and the government's cross-motion for partial summary judgment is **DENIED**.

Pursuant to 28 U.S.C. § 1292(d)(2), the court certifies that the interpretation of § 6621(d) presents a controlling question of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from this order with regard to that question may materially advance the ultimate termination of this litigation.  All proceedings in this matter are stayed until further order of the court.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge